```
         IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF ALABAMA
                   SOUTHERN DIVISION
```

| | |
|---|---|
| BRENDA WILLIAMS, | : |
| Plaintiff, | : |
| vs. | : |
| | :     CIVIL ACTION 08-0201-KD-M |
| MICHAEL J. ASTRUE, | : |
| Commissioner of | |
| Social Security, | : |
| Defendant. | : |

REPORT AND RECOMMENDATION

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*). The action was referred for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Oral argument was waived in this action (Doc. 20). Upon consideration of the administrative record and the memoranda of the parties, it is recommended that the decision of the Commissioner be reversed, that this action be remanded, and that judgment be entered in favor of Plaintiff Brenda Williams and against Defendant Michael J. Astrue.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evi-

dence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was thirty-two years old, had completed a high school education (Tr. 220), and had previous work experience as a customer service representative (Tr. 219).  In claiming benefits, Plaintiff alleges disability due to Diabetes Mellitus Type 1 (Doc. 12 Fact Sheet).

The Plaintiff filed protective applications for disability benefits and SSI on May 5, 2005 (Tr. 47-52; *see* Tr. 16). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that Williams was capable of performing a full range of sedentary work and could, therefore, perform her past relevant work as a customer service representative (Tr. 13-24).  Plaintiff requested review of the hearing decision (Tr. 11-12) by the Appeals Council, but it was denied (Tr. 5-7).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Williams alleges that:  (1) The ALJ did not accord the appropriate weight to the opinions and diagnoses of her treating physician; (2) the

ALJ did not properly consider her own testimony; and (3) the ALJ failed in his duty to develop the record (Doc. 12).  Defendant has responded to—and denies—these claims (Doc. 13).  The evidence of record follows.

Hospital records from USA Medical Center show that Williams was admitted on April 21, 2005 for eleven nights (Tr. 154-57).[1]  Plaintiff was admitted, seventeen weeks pregnant, as "a very brittle diabetic sent for blood sugar control to the high-risk floor" (Tr. 156).  It was noted that, during her stay, Williams "had several episodes of hypoglycemia with blood sugars as low as 35" (Tr. 155) while experiencing one occasion where her sugar was greater than 400 (Tr. 156).  Plaintiff was discharged in good condition with physical activity as she could tolerate.

A consultative exam was performed on August 20, 2005 by Internist Dr. Travis Rutland (Tr. 159-62, 190).  After a thorough examination, Rutland's functional assessment stated as follows:

> The claimant is a 31-year-old white female who has a history of poorly controlled diabetes since age 12 and is currently on a very complex insulin regimen that requires frequent glucose monitoring and insulin dosing the way that it is currently set up for her.  She is currently 34 weeks gestation pregnant also.
> Because of her pregnancy she will have

---

[1] The transcript has other medical records which precede this hospitalization (Tr. 103-42), but they will not be reviewed here as Plaintiff has asserted a disability onset date of April 21, 2005 (Tr. 48).

>           limitations in her ability to lift and carry.
>           She should be able to lift and carry 10
>           pounds routinely.
>                She should be able to stand or walk
>           approximately six hours in a cumulatively
>           eight-hour day.
>                She should be able to sit six hours in
>           an eight-hour day.
>                She will have postural limitations
>           secondary to her gravid uterus difficulty
>           bending, stooping, crouching, climbing,
>           kneeling and pulling will be noted.
>                She has no manipulative limitations.
>                Environmental limitations will require
>           her to have ability to monitor her Accu-Chek
>           at least 4x daily, as per her current insulin
>           regimen dictates.

(Tr. 162).

Dr. Asad Sheikh, an Obstetrician/Gynecologist, wrote a letter on November 8, 2005, indicating that he had treated Williams for her pregnancy from February through September 2005 (Tr. 185-89).  In his letter, Sheikh discussed the extreme difficulties Plaintiff suffered because of her diabetes, characterizing them as "life threatening;" the doctor also discussed the complications presented by the birth itself, concluding by stated that Williams was "unable to work outside of the home and in fact is requiring assistance in taking care of her new baby as well as her other children.  I believe this individual is disabled and it is unclear without further evaluation how much she may benefit from rehabilitation" (Tr. 185).  Sheikh completed a functional limitations form in which he indicated that Plaintiff had the ability to sit for two hours and

stand/walk for one hour at a time and able to sit for eight hours and stand/walk for three hours during an eight-hour day (Tr. 186).  The doctor indicated that Williams would need less than an hour of bed rest during an eight-hour day, but would not be expected to miss any work due to pain; Plaintiff could lift and carry up to twenty pounds for up to two hours during an eight-hour day (*id*).  Sheikh also found Williams had the ability to climb, stoop, kneel, crouch, crawl, reach, and manipulate (both fine and gross), and use hands and feet for repetitive actions, each, for three hours during an eight-hour day; he said that she should never work at high, exposed places (*id.*).  The doctor completed a pain form indicating that she had no pain in any significant degree and that physical activity did not increase her pain, but that her medications would restrict her from working as she would be unable to function at a productive level (Tr. 187).  Sheikh stated that Williams was markedly limited in her ability to concentrate, respond to work pressures, and function independently; she was moderately limited in her ability to functionally socially, carry out instructions, respond to supervision and co-workers, perform simple or repetitive tasks, and deal with the public (Tr. 188).

On March 16, 2006, Family Nurse Practitioner Deborah D. Hyatt completed a functional limitations form, a pain form, and a work-related activities form which, for the most part, mirrors

the same forms completed by Dr. Sheikh (Tr. 192-94; *cf.* Tr. 186-88).  The Court notes that where Hyatt's opinion differed from that of the doctor, the Nurse found Williams to be more limited in her abilities.

On May 22, 2006, the Saraland Fire & Rescue Department completed a form indicating that Williams had an incident where she had been driving her vehicle and had become disoriented (Tr. 191).  After consuming a Dr. Pepper and doughnuts, her blood sugar returned to a normal level.

On February 23, 2007, Nurse Hyatt wrote a letter indicating that Plaintiff was under her care[2] for uncontrolled Diabetes Type 1 (Tr. 195).  The letter goes on to stated that Williams "is a very brittle diabetic with numerous drops and variations in her blood sugars despite using Lantus and Humalog insulins.  At this time it is difficult for her to hold a job . . . . She has difficulty even going to the grocery store without experiencing drops in her glucose levels" (*id.*).

At the hearing before the ALJ, Plaintiff testified that she checks her blood sugar and takes her insulin shot before she does anything else every morning; then she takes two of her children to school (*see generally* Tr. 201-18).  She cares for an eighteen-months-old child at home and washes clothes and performs

---

[2]The Court notes that the letter is written on letterhead for a medical group which lists two doctors as well (Tr. 195).

household duties, which she does, mostly, by herself; Plaintiff does the family shopping.  Williams checks her blood sugar, at least, every two hours; she has a sugar drop at least once every day with no anticipatory symptoms.  A family-member or friend checks on her every hour or hour-and-one-half.  Her memory is not as good as it used to be; Plaintiff's hands and feet fall asleep often.  Williams has had numerous episodes where emergency medical personnel had to come to her house because of a sugar drop; the most recent occasion was the Tuesday before the hearing.  It had been several weeks since she lost complete consciousness.  Plaintiff tells her doctors of these episodes and assumes that their medical notes would reflect her reports.  Williams can drive, but does not like to.  Plaintiff also suffers some bladder incontinence and takes medications for depression.  Upon questioning by the ALJ, Williams stated that she was present when Dr. Sheikh completed the functional capacity form and activities form, that he asked her about her abilities and limitations, and that she responded to his questions as he completed it (Tr. 215-17).

　　　The ALJ called a Vocational Expert (hereinafter *VE*) who testified that Plaintiff's past relevant work as a customer service representative was classified as sedentary work; he also stated that she would be able, under the restrictions placed on her by Dr. Rutland, to perform her past relevant work (Tr. 219-

225).  The restrictions contemplated by Dr. Sheikh in the functional capacity form would also allow her to do sedentary work; however, the information in the pain form and activities form, which he completed, would preclude past work.  The VE stated that the functional capacity form completed by Nurse Hyatt would allow for sedentary work, except for the restriction that she needed up to an hour of bed rest during an eight-hour day; Williams's own testimony would preclude any work.

In his decision, the ALJ discredited Plaintiff's testimony, the opinions and conclusions of Dr. Sheikh and Nurse Hyatt, and assigned determinative evidentiary weight to the conclusions of Dr. Rutland (Tr. 22-24).  These determinations form the basis for Williams's claims in this action.

Plaintiff has claimed that the ALJ did not develop a full and fair record (Doc. 12, pp. 10-12).[3]  The Eleventh Circuit Court of Appeals has required that "a full and fair record" be developed by the Administrative Law Judge even if the claimant is represented by counsel.  *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

In reaching his determination, the ALJ discounted the conclusions of Nurse Hyatt, specifically stating the following: "The undersigned has also thoroughly considered documentation

---

[3]Because the Court finds that this claim has merit, it is not necessary to address Plaintiff's other claims.

completed by a nurse practitioner, referenced in Exhibit 11F, but is unable to find treatment records or other documentation in support of such limitations since the claimant's alleged onset date of disability" (Tr. 22).  The ALJ also discounted Plaintiff's testimony, noting that "[w]hile the claimant further indicated that she informed her physician of each hypoglycemic episode, the undersigned can find no objective evidence of this from a review of the pertinent documentation of record" (*id.*).  The ALJ discounted Dr. Sheikh's conclusions, noting that "[t]he objective record, since the claimant's alleged onset date of disability, has failed to document the limitations set forth in any of the documents completed" by him (*id.*).

    The record shows that Dr. Sheikh stated that he began treating Plaintiff in February 2005 and that he had last seen her on September 27, 2005 (Tr. 185); however, the only evidence from Dr. Sheikh is the letter he wrote on November 8, 2005 and the three forms he completed.  In her letter of February 23, 2007, Nurse Hyatt states that "Williams is currently under our care" (Tr. 195); though the three forms she completed on March 16, 2006 appear in the file (Tr. 192-94), there are no medical records which post-date August 11, 2004 from this medical group.

    Three sources of information—Dr. Sheikh, Nurse Hyatt, and Plaintiff—were discounted because there was no medical evidence to support them.  The ALJ admitted as much, yet failed to do what

was necessary to secure medical records which exist.  Though the Court cannot say whether or not those records would objectively support the opinions and conclusions of their sources, the Court can say that the ALJ's failure to secure them renders his determination questionable.

Based on review of the entire record, the Court finds that the Commissioner's decision is not supported by substantial evidence.  Therefore, it is recommended that the action be reversed and remanded to the Social Security Administration for further administrative proceedings consistent with this opinion, to include, at a minimum, a supplemental hearing for the gathering of all of the necessary medical evidence to reach a determination as to Plaintiff's ability to work.

Furthermore, it is recommended that a final judgment be entered ordering remand in this action pursuant to sentence four of 42 U.S.C. § 405(g).  *See Melkonyan v. Sullivan*, 501 U.S. 89 (1991).  For further procedures not inconsistent with this recommendation, see *Shalala v. Schaefer*, 509 U.S. 292 (1993).

### MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.  **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)©; *Lewis v. Smith*, 855 F.2d 736,

738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.  **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 30th day of October, 2008.

                                                s/BERT W. MILLING, JR.
                                                UNITED STATES MAGISTRATE JUDGE